UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

JERMEIL TARTER,                              )
                                             )
          Petitioner,                        )
v.                                           )          No. 2:14-CV-223-TWP-MCLC
                                             )
GERALD MCCALLISTER,                          )
                                             )
          Respondent.                        )

## MEMORANDUM OPINION

Jermeil Tarter ("Petitioner"), by counsel, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [Doc. 1], challenging the legality of his confinement under a 2005 judgment of conviction from the Sullivan County Criminal Court. Warden General McCallister ("Respondent") has filed an answer to the habeas petition, arguing that relief is not warranted with respect to Petitioner's claims and, in support of those arguments, he has filed copies of the state court record [Doc. 17, 18]. Petitioner subsequently filed a motion to amend his petition [Doc. 19], which the Court denied [Doc. 21]. Petitioner has not filed a reply to Respondent's answer and the time for doing so has passed. See E.D. Tenn. L.R. 7.1(a), 7.2.

For the reasons set forth below, the Court determines that no evidentiary hearing is warranted in this case, Petitioner's § 2254 petition [Doc. 1] will be **DENIED**, and this action will be **DISMISSED**.

## I.      PROCEDURAL HISTORY

On January 20, 2005, a Sullivan County jury convicted Petitioner of the sale of more than .5 grams of cocaine within a school zone, delivery of more than .5 grams of cocaine within a school zone, and possession of more than .5 grams of cocaine within a school zone. The trial court

initially merged the convictions for delivery and possession but later dismissed those charges. The Tennessee Court of Criminal Appeals ("TCCA") affirmed the convictions and sentence, but reversed the judgment of the trial court dismissing the convictions for delivery and possession, ordering that those convictions and sentences be merged into one judgment. The Tennessee Supreme Court denied Petitioner's application for permission to appeal.

On August 15, 2007, Petitioner filed a petition for post-conviction relief. The post-conviction court found that Petitioner failed to state a colorable claim in his pro se filing and dismissed the petition. On September 26, 2007, Petitioner filed a "Motion to Vacate Judgment Alternatively a Notice of Appeal." The post-conviction court treated the motion as a motion to reopen and denied the same on October 24, 2007. The TCCA affirmed the dismissal. In an order entered September 8, 2010, the Tennessee Supreme Court granted permission to appeal, reversed TCCA's judgment and remanded the case for appointment of counsel and the opportunity to amend the petition. An amended petition was filed on September 1, 2011. Following an evidentiary hearing on the petition, the post-conviction court entered its written order denying relief. On appeal, the TCCA affirmed the dismissal, and the Tennessee Supreme Court denied Petitioner's application for permission to appeal. There followed this timely § 2254 habeas corpus application.

## II.    FACTUAL BACKGROUND

The following summary of the factual background is taken from the TCCA's opinion on direct appeal of Petitioner's conviction.

> On November 14, 2003, Officer Freddie Ainsworth of the First Judicial District Drug Task Force participated in an investigation conducted by the Second Judicial District Drug Task Force. Officer Ainsworth, who was working undercover with a confidential informant, Doris Salyers, testified that he was provided $100 in marked bills and directed to a residence on Sevier Street in Kingsport. Other officers near the residence set up audio and video recording equipment. Upon their arrival at the residence, Ms. Salyers approached a white male, asked for "Cathy," and learned that she was not there. At that point, the defendant, a black male, approached them

and Officer Ainsworth asked the defendant for "a buck," which he described as street slang for "a Hundred Dollars ($100.00) worth." According to the officer, the defendant then "pulled a medicine bottle out of one of his pockets and he shook out . . . four rocks." Officer Ainsworth recalled that "[t]here was still 20, 25 rocks . . . in the medicine bottle, the same color and shape as what he had put into my hand." He gave the defendant $100 and then left. The officer later gave the substances to Agent Eddie Nelson.

Afterward, Officer Ainsworth selected the defendant, a black male, from a photographic lineup, explaining that he was ninety percent certain of the identification. He stated that later, when he eventually saw the defendant in person at the preliminary hearing, he became one hundred percent certain of his identification.

Officer Cliff Ferguson of the Kingsport Police Department, who had known the defendant for approximately eight years and was familiar with his physical appearance, viewed the videotape of the transaction and identified the defendant as the individual who sold cocaine to Officer Ainsworth. Officer Ferguson also saw a digitally enhanced version of the videotape which "took some of the glare off of" the images. He expressed certainty that the defendant was the perpetrator.

Officer Eddie Nelson of the Second Judicial District Drug Task Force, who had provided Officer Ainsworth with money to make the controlled purchase, confirmed his receipt of the cocaine from Officer Ainsworth. He recalled that he placed it in a sealed envelope and mailed it to the Tennessee Bureau of Investigation Lab in Knoxville. Officer Nelson testified that at the request of the assistant district attorney, he sent the original videotape recording of the transaction to the Regional Organized Crime Information Center to have the quality enhanced.

Steven Hobbs of the Regional Organized Crime Information Center in Nashville testified that he reviewed and digitized the videotape. He stated that he reduced the gamma settings in order to remove some of the glare. Hobbs explained that he used a video editing system to isolate certain frames of the video and create photographs.

Officer Bryan Bishop, Director of the Second Judicial District Drug Task Force, who supervised the investigation, testified that he operated the surveillance equipment during the transaction. He explained that he made no attempt to recover the "buy" money because he did not want to compromise the "ongoing investigation."

Celeste White, a forensic chemist with the Tennessee Bureau of Investigation, testified that she received the package containing the rocks collected by Officer Nelson, weighed the substance, and then used an ultraviolet spectrophotometer and an infrared spectrophotometer to determine its chemical composition. Testing established that the substance was cocaine base and weighed .54 grams.

Tyler Fleming, Director of Student Services for Kingsport City Schools, testified that at the time of the offenses, the New Horizon School, which housed an alternative school program and several other programs, was located at 520 Myrtle Street. Jake White, an employee of the City of Kingsport Geographic Information System Division, compiled a map which showed the New Horizon School and shaded a one-thousand-foot buffer zone around the school. The map established that the residence on Sevier Street was within one thousand feet of the New Horizon School. White testified that the distance from the center of the New Horizon School building to the residence on Sevier Street was 905 feet.

Doris Ann Salyers, who was called as a witness for the defense, testified that she was unable to identify the individual who sold the drugs to Officer Ainsworth. It was her recollection that the perpetrator was a black male wearing a hooded sweatshirt. During cross-examination by the state, Ms. Salyers acknowledged that she had medical problems which affected her memory and her ability to identify people, including her own family members.

*State v. Tarter*, No. E2005-01013-CCA-R3CD, 2006 WL 568158 *2–3 (Tenn. Crim. App. Mar. 8, 2006), *perm. app. denied* (Tenn. Aug. 21, 2006).

## III.   STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified in 28 U.S.C. § 2254, *et. seq*., a court considering a habeas claim must defer to any decision by a state court concerning the claim, unless the state court's judgment: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(1)–(2).

A state court's decision is "contrary to" federal law when it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or resolves a case differently on a set of facts, which cannot be distinguished materially from those upon which the precedent was decided.  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  Under the "unreasonable application" prong of 2254(d)(1), the relevant inquiry is whether the state court decision identifies the legal rule in the Supreme Court cases which govern the issue, but unreasonably applies the principle to the

particular facts of the case. *Id*. at 407. The habeas court is to determine only whether the state court's decision is objectively reasonable, not whether, in the habeas court's view, it is incorrect or wrong. *Id*. at 411.

The § 2254(d) standard is a hard standard to satisfy. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (noting that "§ 2254(d), as amended by AEDPA, is a purposefully demanding standard . . . 'because it was meant to be'") (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)). Further, where findings of fact are supported by the record, they are entitled to a presumption of correctness which may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## IV.    ANALYSIS

Petitioner's § 2254 habeas corpus petition raises seven grounds for relief. In his supporting memorandum, Petitioner alleged (1) that the evidence contained in the record is insufficient as a matter of law to sustain a conviction for the offenses; (2) that there is no credible evidence contained in the record to support the verdict returned by the jury; and (3) that the verdict is contrary to the law and the evidence. As all three of these claims relate to legal insufficiency of the evidence to support his conviction, the Court finds it to be efficient, as did the parties, to consolidate these three claims into one issue for analysis. Next, Petitioner argues (4) that the trial court erred by admitting the video recording of the offence at trial; (5) prosecutorial misconduct during closing argument; (6) ineffective assistance of counsel during the jury voir dire; (7) ineffective assistance of counsel in regard to counsel's failure to advice Petitioner concerning the advantages and disadvantages of testifying at trial; and (8) ineffective assistance of counsel in regard to counsel's failure to fully explain Petitioner's range of punishment and the state's plea offer.

In his response, Respondent argues that Petitioner is not entitled to relief on any of the claims alleged because the state court decision rejecting the claims on their merits is entitled to deference under 28 U.S.C. § 2254. He also reasoned that the claims should be dismissed because the state court decision was not an unreasonable determination based on the facts presented at trial.

## A.    INSUFFICIENT EVIDENCE

In his first three claims, Petitioner contends that the evidence produced at trial was insufficient to support a conviction for the sale, delivery, and possession of more than .5 grams of cocaine within one thousand feet of a school. According to Petitioner, "the State failed to prove every element of the offenses . . . beyond a reasonable doubt" and thus, the conviction should be reversed [Doc. 5 p. 8]. Specifically, Petitioner avers that there was not sufficient evidence produced at trial to prove that he was the person who sold the crack-cocaine to Ainsworth [*Id*. at 9]. He argues that the surveillance video was not clear and that there was no witness at trial that could say with absolute certainty that Petitioner was, in fact, the individual who sold, delivered, and possessed the cocaine [*Id*.].

### 1.    APPLICABLE LAW

The United States Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307 (1979), provides the controlling authority for resolving claims of insufficient evidence. *See Gall v. Parker*, 231 F.3d 265, 287-88 (6th Cir. 2000) (identifying *Jackson* as the governing precedent for all claims of insufficient evidence, *superseded by statute on other grounds as recognized by Parker v. Matthews*, 132 S. Ct. 2148 (2012)). In *Jackson*, the Supreme Court held that evidence, when viewed in the light most favorable to the prosecution, is sufficient if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. Resolving conflicts in testimony, weighing the evidence, and drawing reasonable inferences

from the facts are all matters, which lie within the province of the trier of fact. *Id.*; *see also Cavazos v. Smith*, 132 S. Ct. 2, 6 (2011) ("[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" (quoting *Jackson*, 443 U.S. at 326)).

A habeas court reviewing an insufficient evidence claim must apply two levels of deference. *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007). Under *Jackson*, deference is owed to the fact finder's verdict, "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (citing *Jackson*, 443 U.S. at 324 n.16). Under AEDPA, deference is also owed to the state court's consideration of the fact finder's verdict. *Smith*, 132 S. Ct. at 6 (noting the double deference owed "to state court decisions required by § 2254(d)" and "to the state court's already deferential review."). Hence, a petitioner bringing a claim of insufficient evidence "bears a heavy burden." *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986).

## 2. DISCUSSION

Although the TCCA decision did not specifically cite to the Supreme Court ruling in *Jackson v. Virginia*, it did rely upon state court decisions that were based upon and applied the *Jackson* standard. The TCCA stated "[w]hen the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Tarter v. State*, No. E2012-01698-CCA-R3PC, 2013 WL 5761302, at *2-6 (Tenn. Crim. App. Oct. 22, 2013) (citing *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983)).

Petitioner argued to the TCCA that the evidence is legally insufficient to support his conviction, specifically because of insufficient evidence to establish his identity as the perpetrator. The TCCA defined "identity" as "an indispensable element" and stated that "identification of the perpetrator of a crime may be accomplished by either direct or circumstantial evidence, or both." *Tarter*, 2013 WL 5761302, at *2–6 (citing *White v. State*, 533 S.W.2d 735, 744 (Tenn. Crim. App. 1975) and *State v. Thompson*, 519 S.W.2d 789, 793 (Tenn. 1975)). Following the guiding principle in *Jackson*, the TCCA found that the evidence presented at trial was legally sufficient to support a finding by the trier of fact that Petitioner was in fact the perpetrator who sold, delivered, and possessed more than .5 grams of cocaine within one thousand feet of a school zone. *Tarter*, 2013 WL 5761302. As such, this Court must now determine whether the state court's application of law to the facts of Petitioner's case was unreasonable.

Summarizing the proof sustaining Petitioner's conviction specifically concerning the issue of identification, the TCCA pointed to the fact that Officer Ainsworth identified Petitioner from a photographic lineup. *Tarter*, 2013 WL 5761302. While Officer Ainsworth conceded that he was only ninety percent sure of the identification when he viewed the photographic array, he testified that upon seeing Petitioner at the preliminary hearing he became one hundred percent positive that Petitioner was the perpetrator. *Id*. In addition, Officer Ferguson, who has known Petitioner for eight years, testified that he observed the videotape of the transaction and recognized Petitioner as the perpetrator. *Id*. Although Ms. Salyers testified that she was unable to identify Petitioner as the individual who sold the drugs to Officer Ainsworth, based on her own testament, she suffers from a medical condition that affects her memory and her ability to identify people, including her own family members" *Tarter*, 2006 WL 568158. This medical condition should, and appears to have been taken into consideration when weighing the evidence.

As previously stated, resolving conflicts in testimony, weighing the evidence, and drawing reasonable inferences from the facts are all matters that lie within the province of the trier of fact. *Jackson*, 443, U.S. at 319. Based on the evidence presented in the trial court, the Court finds that there was sufficient evidence for any rational trier of fact to have identified Petitioner, beyond a reasonable doubt, as the perpetrator who sold, delivered and possessed more than .5 grams of cocaine within one thousand feet of a school zone. Further, it was not unreasonable for the state court to conclude under the *Jackson* standard that, weighing all reasonable inference in the state's favor, there was legally sufficient evidence presented to establish Petitioner's identity as the perpetrator. In addition to applying the double deference owed to the fact finder and the state court, this Court cannot find that the TCCA's decision was unreasonable nor was it based on an unreasonable determination of the facts. As such, Petitioner is not entitled to relief on this claim.

## B.     INAPPROPRIATE ADMISSION OF VIDEO RECORDING

Petitioner argues that the trial court erred in denying his motion to suppress the videotape of the drug transaction. [Doc. 5 p. 10]. He contends that the quality of both the original videotape and the enhanced version is so poor that the trial court should not have admitted them into evidence [*Id*.]. In denying relief on this issue, the TCCA deemed the issue waived under state law because of Petitioner's failure to include the suppression hearing transcript in the appellate record and his failure to raise this claim in his motion for new trial [Doc. 17 p. 20 (citing *Tarter*, 2006 WL 568158, at *4)]. The TCCA further noted that, even if the claim had not been waived, there was no error because the evidence qualified as relevant evidence whose probative value substantially outweighed any danger of unfair prejudice [*Id*.].

Looking at the record, this Court agrees with Respondent that the claim is procedurally defaulted due to Petitioner's failure to preserve the issue in state court for review. Furthermore, it

is well established that alleged trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Instead, questions concerning the admissibility of evidence, as well as its probative or prejudicial value, are properly left to the sound discretion of the trial court. *See Oliphant v. Koehler*, 594 F.2d 547, 555 (6th Cir.1979); *Johnson v. Karnes*, 198 F.3d 589, 593 (6th Cir.1999) ("[A]n inquiry as to whether evidence was properly admitted or improperly excluded under state law 'is no part of a federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'") (citations omitted). Only where the admission of the disputed evidence rendered the trial "so fundamentally unfair as to constitute a denial of federal rights" may it provide grounds for granting a writ of habeas corpus. *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir.1994). Here, Petitioner has made no such showing. Accordingly, Petitioner is not entitled to habeas relief on this claim.

## C.  PROSECUTORIAL MISCONDUCT

Petitioner asserts that the prosecuting attorney committed prosecutorial misconduct during closing argument by engaging in witness vouching [Doc. 5 p. 12]. During his closing argument, the prosecutor made the following remarks concerning Officer Ainsworth's testimony:

> He selected the [d]efenant's photograph, but he said, "I'm ninety percent sure." This isn't a man that's just going to be careless with the facts and just say, "Okay, I know what the team line is. The time [sic] line is this is a man that did it, so I jump on board and even though I'm ninety percent, I just jump on board." No. He said, "No, I was ninety percent at that point in time." Agent Ainsworth, did anybody pressure you to say you were a hundred percent? "Nobody ever pressured me.["] Mr. Ainsworth, did you have an opportunity to see the [d]efenant in person again? Yes I did. At what point in time? ["]I was a hundred percent certain this is the guy." Yesterday in [c]ourt, "Are you a hundred percent certain now?" "I am a hundred percent certain this is the guy." Any doubt in your mind? "No, sir. No doubt in my

mind." That's the testimony of somebody as he told you, that, "Yes, I want to see convictions. I want to identify people that are selling drugs," but he also said, "but I also . . . my focus or why I'm here is to tell you the truth," and he told you the truth.

[Doc. 5 p. 13 and Doc. 17 p. 24].

After the above remarks, defense counsel objected to the statements as improper vouching. The trial court overruled the objection. Next, the state court found that the prosecutor had, in fact, improperly vouched for the witness, but the TCCA went on to apply the harmless error standard stating that "[w]hen considered in the context of the entire final argument, which was generally temperate and otherwise appropriate . . . it does not appear that the comment, which was isolated, had any effect on the jury's verdict." *Tarter*, 2006 WL 568158, at *6.

Here, because Respondent does not focus his argument on the fact that the state was incorrect in their finding of prosecutorial misconduct, and the TCCA acknowledges that the prosecutor's conduct was improper, it is appropriate to proceed to a harmless error analysis of Petitioner's prosecutorial misconduct claim.

In *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993), the Supreme Court held that for purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. "Citing concerns about finality, comity, and federalism," the Supreme Court in *Brecht* "rejected the *Chapman* standard[1] in favor of the more forgiving standard of review applied to

_____

[1] In *Chapman v. California*, 386 U.S. 18, 22, 24 (1967), the Supreme held that some constitutional errors can, consistent with the Constitution, be deemed harmless, but only where the court can conclude, "it was harmless beyond a reasonable doubt." *Sheard v. Klee*, No. 15-1813, 2017 WL 2590765, at *5 (6th Cir. June 15, 2017).

nonconstitutional errors on direct appeal from federal convictions." *Fry v. Pliler*, 551 U.S. 112, 116 (2007) (citing *Kotteakos v. United States*, 328 U.S. 750 (1946)). Thus, *Brecht's* more "forgiving" substantial and injurious effect test for harmless error review applies on habeas review of a state court conviction regardless of whether the state courts engaged in a harmless error analysis of the Petitioner's claims. *Fry*, 551 U.S. at 121–22.

The Court of Appeals for the Sixth Circuit has concluded that the *Brecht* standard should be applied to determine whether an error was harmless and that it is not necessary for a habeas court to ask whether the state court unreasonably applied the *Chapman* harmless error standard before determining whether the error had a substantial and injurious effect or influence on the verdict. *Ruelas v. Wolfenbarger*, 580 F.3d 403, 412 (6th Cir. 2009); *Wilson v. Mitchell*, 498 F.3d 491, 503 (6th Cir. 2007); *Vasquez v. Jones*, 496 F.3d 564, 575 (6th Cir. 2007). A federal court on habeas review of a state court decision remains free to determine whether the state court's *Chapman* harmless error analysis was reasonable. If it was, then the claim should be denied. *Id.* However, a federal court is also free to proceed directly to use the *Brecht* test to determine whether the error was harmless. *Id.*

Here, the TCCA applied the *Chapman* harmless error test to find that the prosecutorial misconduct in this case was harmless. Given the weight and amount of the evidence of guilt, the TCCA conclusion that the prosecuting attorney's statements vouching for Officer Ainsworth was harmless error was not an unreasonable application of clearly established law so as to entitle Petitioner to habeas relief. Moreover, Petitioner failed to establish that the prosecutor's conduct had a substantial and injurious effect or influence on the jury verdict, thus satisfying the *Brecht* harmless error test.

This Court finds that Prosecutor's conduct, while improper, did not have a substantial and injurious effect on the jury verdict, as required by *Brecht* to obtain habeas relief. Thus, Petitioner is not entitled to habeas relief on this claim.

### D.    INEFFECTIVE ASSISTANCE OF COUNSEL

In his final three claims, Petitioner contends that he received ineffective assistance of counsel from his trial attorney. Petitioner argues that the trial court erred in denying and dismissing his petition for post-conviction relief because "the evidence at the post-conviction hearing established that counsel was deficient and [Petitioner] showed a reasonable probability that, but for trial counsel's unprofessional errors, the result of the proceeding would have been different" [Doc. 5 p. 22].

### 1.    APPLICABLE LAW

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. A criminal defendant's Sixth Amendment right to counsel necessarily implies the right to "reasonably effective assistance" of counsel. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the *Strickland* standard for proving ineffective assistance of counsel, a defendant must meet a two-pronged test: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Id*.

Proving deficient performance requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed to the defendant by the Sixth Amendment." *Id*. The appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id*. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged to not have been the

result of reasonable professional judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). It is strongly presumed that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

The second prong, prejudice, "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Id*. Here, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003) (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted). Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would have probably won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

## 2. **DISCUSSION**

Petitioner asserts that he received ineffective assistance of counsel from his trial attorney when (1) "[t]rial counsel failed to properly voir dire jurors concerning their inherent biases and prejudices against [Petitioner] regarding the issue of race;" (2) "[t]rial counsel failed to adequately counsel [Petitioner] concerning his right to testify and remain silent and the advantages and disadvantages of testifying;" and (3) "[t]rial counsel failed to fully inform [P]etitioner of the applicable range of punishment" or "discuss . . . the strengths and weaknesses of the state's case against [him]" [Doc. 5 p. 15]. The TCCA, applying *Strickland*, concluded that Petitioner had not met his burden of proving deficient performance or prejudice [Doc. 17]. Thus, the task before the

Court is to determine whether the state court's application of *Strickland* to the facts of Petitioner's case was unreasonable.

### a. Voir Dire

Petitioner, an African-American, argues ineffective assistance of counsel in that trial counsel failed to properly voir dire jurors concerning their inherent biases and prejudices against Petitioner's race [Doc. 5 p. 31]. The transcript of Petitioner's trial was made an exhibit to the post-conviction hearing. It reflects that during voir dire, Counsel explained that he sometimes had to "get rough" with witnesses and asked if any prospective jurors would hold this against him or against Petitioner. Counsel then said:

> What about if [the defendant] is a black man? That is important [in] this day and time. They say racism is over with, but we still have bias and prejudice. I know that. I use certain words that I grew up with, and they come out of my mouth every once in a while, and people look at me in awe, when I use the N word, but you can't just strike something out of your brain. It is there. Sometimes it pops out. That is about all I knew people, colored people, were called, but is there anyone that would hold, just, race, color, against a young man?

*Tarter*, 2013 WL 5761302, at *7. Petitioner asserts that by telling the jury that he still uses the "N" word, while representing an African-American in a predominately Caucasian county, denied Petitioner a fair trial [Doc. 5 p. 33].

When questioned at the post-conviction hearing, counsel alleged that he made the statement in question to address racial issues and prejudice [*Id*. at 31]. On direct examination, counsel explained his statement in detail:

> Q. (Mr. Scott) Mr. Dillow, turning to one final issue, that has to do with your voir dire concerning Mr. Tarter being African American.
> Do you recall that, sir? Your- your voir dire concerning that?
>
> A. Yes, sir.

Q.      You stated to the jury, did you not, that in discussing the – the N-word, it was just something that you grew up with, and it just comes out of your mouth every once in a while, and just – people just look at you in awe. Did you tell them that?

A.      Certainly.

Q.      Why did you tell them that, sir?

A.      Because I was dealing with a person of color, African American. I was trying to find out if they- anyone had any bias or prejudice against African Americans. It exists and I'm aware of that. But I grew up in the late '40's, 50's, 60's and early '70s when race was a hatred all over the country. I'm well aware of that.

Q.      Do you have prejudice against African Americans?

A.      Sir?

Q.      Do you have prejudice?

A.      Absolutely not.

. . .

Q.      But in fact, you do use the N-word.

A.      No, sir.
        I have, and I still might do it. And in the last month or so I may have – may have used it. And sometimes I use it for effect. It's to see what other people- how they will react. I have to try to read people and look at jurors and get a indication [sic] from their face and their expressions.

[Doc. 5 p. 31-33].

The TCCA found that counsel's statements were in the context of acknowledging racial prejudices upon which the prospective jurors should not rely in considering the case. *Tarter*, 2013 WL 5761302, at *7. Although TCCA acknowledged that counsel's references to the "N-word" was unnecessary to address the possibility of racial prejudice, the TCCA did not find that those remarks condoned racism or that they had any negative effect on Petitioner receiving a fair trial. *Id.* Accordingly, the TCCA found that Petitioner failed to establish clear and convincing evidence

from which the trial court could conclude that counsel's performance was deficient and that Petitioner was prejudiced as a result. *Id.*

This Court notes that counsel is granted deference when conducting voir dire. *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2009). "An attorney's actions during voir dire are considered to be matters of trial strategy. *Holder v. Palmer*, 588 F.3d 328, 338 (6th Cir. 2009). Based on counsel's own testament, he strategically used "the N-word" during voir dire to gage people's reactions in order to determine prejudice [Doc. 5 p. 22]. In order to avoid second-guessing counsel's strategic decisions, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689 (a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound trial strategy") (internal citation omitted). A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness." *Id.*

Notwithstanding the deference owed to the state court's decision, and also to counsel's strategic choices during voir dire, this Court finds that Petitioner has failed to demonstrate how counsel's statements during voir dire rendered the trial unfair. This Court further finds that the state court's application of the *Strickland* standard was not unreasonable based on the testimony presented at the post-conviction hearing. As such, Petitioner is not entitled to relief on this claim.

### b.     Counsel regarding decision whether to testify at trial

Petitioner argues ineffective assistance of counsel because counsel failed to adequately advise him of the advantages and disadvantages of testifying at trial [*Id.*]. In support of his

argument, Petitioner looks to the Tennessee Supreme Court case *Momon v. State*, 18 S.W.3d 152 (Tenn. 1999). In *Momon*, the court followed a three-part test to ensure that an attorney does not unilaterally waive a criminal defendant's right to testify in a criminal trial. *Momon*, 18 S.W.3d at 162. Petitioner argues that the third element of the three-part test was not met in this case. The third element reads "the defendant has consulted with his or her counsel in making the decision whether or not to testify; that the defendant has been advised of the advantages and disadvantages or testifying; and that the defendant has voluntarily and personally waived the right to testify." *Id*. Although Petitioner admits that failure to follow this three-part test is not enough to warrant a new trial, he suggests that it should warrant a reversal [Doc. 5 p. 35].

However, the TCCA determined that Petitioner is not entitled to relief on this issue [Doc. 17 p. 28]. The TCCA supported its decision with the following analysis.

> Counsel testified that although he could not recall specifically discussing whether the Petitioner would testify, it was his practice to discuss the advantages and perils of testifying with his clients. He was certain that he and the Petitioner had this discussion before voir dire. We do not view counsel's statement in voir dire that he had not yet asked the Petitioner if he would testify as a declaration that they had not discussed the benefits and perils of testifying but rather as a statement that counsel had not yet asked the Petitioner what his final decision would be. We note, as well, that the Petitioner was questioned at the trial regarding whether he would testify. He stated that it was his decision, not counsel's, that he would not testify, and that he freely and voluntarily made the decision. We acknowledge that the Petitioner was not specifically questioned at the trial about whether counsel had advised him regarding his decision to testify and that the Petitioner testified at the post-conviction hearing that counsel never discussed with him whether he would testify. We note, though, the trial court's finding that the Petitioner's testimony was not credible. We conclude that the trial court did not err in determining that the Petitioner failed to prove his claim by clear and convincing evidence. The Petitioner is not entitled to relief on this basis.

*Tarter*, 2013 WL 5761302, at *7.

It is apparent from the post-conviction court's memorandum findings on this claim that the court discredited Petitioner's testimony and accredited counsel's post-conviction testimony in

which he testified that after practicing for forty-two years, it was his habit to discuss with his clients whether to testify at trial. Based on the testimony presented at the post-conviction hearing, disputed factual issues were resolved showing that counsel's performance was not deficient. Alternatively, Petitioner has failed to show that he was actually prejudiced by his failure to testify. The record indicates that several witnesses corroborated the government's version of the events. *See Farley v. United States*, No. 97-4400, 1999 WL 645294, at *2 (6th Cir. Aug. 13, 1999) (unpublished order) (finding that the petitioner had not shown actual prejudice by his attorney's failure to properly advise him about his right to testify, where several witnesses corroborated the government's version of the events). A reasonable juror could easily have discredited Petitioner's testimony in light of the evidence that was arrayed against him. Accordingly, the state court decision is not contrary to federal law and Petitioner is not entitled to relief on this claim.

### c. Counsel regarding potential sentencing exposure

Petitioner contends that counsel provided ineffective assistance because he failed to inform Petitioner of the possible sentence he might receive if he went to trial, the strengths and weaknesses of the state's case, and the benefits and detriments of a trial as opposed to accepting the state's plea offer [Doc. 5 p. 38]. The state post-conviction court held a hearing at which both Petitioner and counsel testified as to their recollections of counsel's discussions with Petitioner regarding his sentencing range and plea offer. As stated above, the post-conviction court's memorandum findings discredit Petitioner's testimony and accredit counsel's post-conviction testimony. The TCCA found as follows:

> Although counsel could not specifically recall discussing the range of punishment and plea bargaining with the Petitioner, he was certain he did. He said that the Petitioner insisted he did not commit the offense and that he wanted a trial. Counsel said that the Petitioner knew of the terms of the plea offer from the beginning of counsel's representation but that they did not discuss it at length because he could not force the Petitioner to accept it. He noted that the Petitioner wanted a trial

because a police officer was only 90% certain in his identification of the Petitioner. He acknowledged he had no specific memory of discussing the offer with the Petitioner but was certain they discussed the offer. A letter from the prosecutor to counsel regarding discovery stated that the prosecutor had previously extended an offer of eight years at 100% service. In a handwritten, pro se motion to dismiss counsel filed shortly after the trial, the Petitioner requested "an attorney that will properly defend me, and not assume my guilt by trying to persuade me into taking plea bargains up until the very day of the trial, before thoroughly researching my case, and all angles of my defense appropriately." Counsel testified that he reviewed the discovery materials and provided them to the Petitioner's girlfriend at the Petitioner's request and that he met with the Petitioner to prepare for the trial. As we have noted, the trial court found that the Petitioner's testimony was not credible.

*Tarter*, 2013 WL 5761302, at \*10.

In support of his claim, Petitioner relies on *Missouri v. Frye*, 566 U.S. 134 (2012) which states "[t]he Sixth Amendment right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process." Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. *Id.* As in Petitioner's previous allegations of ineffective assistance of counsel, courts look to the familiar standard set forth in *Strickland*. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985) ("[T]he voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.").

The TCCA applied *Strickland* and *Hill* to conclude that the record supports a determination that counsel was not deficient in his performance during the plea-bargaining stage. As the TCCA pointed out, although counsel could not specifically recall discussing the range of punishment and plea bargain with Petitioner, he was certain he did. Counsel stated that Petitioner knew of the terms of the plea offer but they did not discuss it at length because Petitioner insisted that he did not commit the offense and wanted to go to trial. A motion to dismiss counsel, filed pro se by Petitioner contradicts Petitioner's allegations that he was unaware of any plea offer. In the motion, Petitioner requested "an attorney that will properly defend me, and not assume my guilt by trying

to persuade me into taking plea bargains up until the very day of the trial . . ." *Tarter*, 2013 WL 5761302, at *10.

This Court's finds that the state court's application of the governing precedent law of *Strickland* and *Hill* was reasonable. The record does not support a finding of ineffective assistance because Petitioner failed to provide any supporting facts that counsel's performance was deficient. Because Petitioner failed to establish his burden of proof, this claim will not support issuance of habeas relief.

## V.     CONCLUSION

For the above mentioned reasons, the Court finds that Petitioner's claims do not warrant the issuance of a writ of habeas corpus. Therefore, Petitioner's petition for a writ of habeas corpus will be **DENIED**.

## VI.     CERTIFICATE OF APPEALABILITY

The Court must also consider whether to issue a Certificate of Appealability ("COA"), should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if issued on COA, and a COA may only be issued where a petitioner has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 253(c)(2). Where a claim has been dismissed on the merits, a substantial showing is made if reasonable jurists could conclude the issues raised are adequate to deserve further review. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a claim has been dismissed on procedural grounds, a substantial showing is demonstrated when it is shown that reasonable jurists would debate whether a valid claim has been stated and whether the court's procedural ruling is correct. *Slack*, 529 U.S. at 484.

After reviewing each of Petitioner's claims, the Court finds that reasonable jurists would not conclude that Petitioner's claims are adequate to deserve further review. As such, because Petitioner has failed to make a substantial showing of the denial of a constitutional right, a COA will not issue.

**AN APPROPRIATE ORDER WILL FOLLOW.**

ENTER.

_s/ Thomas W. Phillips_____
Senior United States District Judge